IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KRISTIE ROWLEY,<br><br>Plaintiff,<br><br>vs.<br><br>BRIGHAM YOUNG UNIVERSITY, RENATA FORSTE, and CARDELL JACOBSON,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:18-cv-00358-TC |

Plaintiff Kristie Rowley brought this action against her former employer, Brigham Young University (BYU), and two former supervisors, for events stemming from her efforts to take parental leave. Dr. Rowley alleges that her then-supervisor, Dr. Renata Forste, prevented her from taking leave in violation of BYU policy. After an internal investigation faulted Dr. Forste for doing so, Dr. Forste retaliated against Dr. Rowley, and in the process sabotaged Dr. Rowley's efforts to gain tenure status. Dr. Rowley alleges pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, retaliation in violation of the Family and Medical Leave Act (FMLA), and pendent state law breach of contract claims.

BYU, Dr. Forste, and Dr. Cardell Jacobson (collectively, "Defendants") have moved to dismiss certain claims they argue fall outside the applicable statutes of limitations. Dr. Forste

and Dr. Jacobson also move to dismiss the FMLA claims against them individually, on the grounds that they do not fall within the Act's definition of "employers." For the reasons set forth below, the court grants in part and denies in part the Defendants' Motion to Dismiss.

## FACTS[1]

BYU hired Dr. Rowley as an assistant professor in the Department of Sociology, and she began teaching during the winter semester of the 2006-2007 school year. In the fall of 2007, BYU assigned her to a Continuing Faculty Status (CFS) position, BYU's equivalent of a tenure track.

BYU requires that a faculty member complete six years of service in a CFS position to be eligible for tenure. During those six years, the faculty member must pass two formal reviews: the first occurs during the third year and the second occurs during the sixth year. The reviews include an assessment of the faculty member's performance and potential in three categories: citizenship, teaching, and scholarship.

The six-year CFS period can be extended if the faculty member gives birth to or adopts a child and takes parental leave. BYU's policy reads, in relevant part:

> When a full-time faculty member who has Continuing Faculty Stat[u]s (CFS), or is on-track for CFS, becomes the parent of a child, either by childbirth or by adoption of a child as defined by the Family Medical Leave Act (FMLA), that faculty member usually will qualify for a parental leave of one semester for the purpose of serving as the child's primary caregiver . . . . Parental leave is intended to be consistent with the rights afforded under the FMLA. If any faculty member is FMLA eligible, then any qualifying FMLA

---

[1] For the purposes of evaluating the Defendants' Motion, the court accepts Dr. Rowley's well-pleaded factual allegations as true, and views the facts in the light most favorable to her. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

2

> leave time shall be administered concurrently with parental and
> personal leaves . . . . The presumption is that a parental leave will
> result in a one-year extension of the CFS clock.

(Compl. ¶ 18, ECF No. 2.)

To take parental leave, a faculty member must submit a "Request for Parental Leave" form for approval from his or her department chair, the Dean, and the Associate Academic Vice President. A faculty member can elect the semester to take parental leave—either "the semester in which the child is born" or "a subsequent semester that begins no later than six months after the birth . . . ." (Id. ¶ 20.) Moreover, BYU's policy provides that "[d]uring parental leave the faculty member shall be relieved of her or his normal duties," and need not teach, conduct research, or participate in committee work. (Id. ¶ 19.)

Dr. Rowley's allegations of wrongdoing begin in June 2010. Dr. Rowley had just passed her third-year CFS review with exceptionally high marks in teaching and citizenship (though with some concerns in research). She had also become pregnant with her first child.

In July or August of 2010, Dr. Rowley had a conversation with Dr. Forste, her department chair, about a plan for maternity leave. Dr. Forste did not tell Dr. Rowley about BYU's parental leave policy, her rights under the FMLA, or the presumptive one-year extension of her CFS period. Instead, Dr. Forste told Dr. Rowley to work directly with her to schedule leave. She told Dr. Rowley that she would "make certain that Dr. Rowley's status as a new parent was properly accommodated," and that BYU might deny an official request for leave. (Id. ¶ 26.) She also told Dr. Rowley that her CFS period would not be extended for a year.

Dr. Rowley coordinated her maternity leave with Dr. Forste directly. By doing so, she missed many of the benefits of BYU's leave policy. Dr. Rowley did not receive a one-year

3

extension of her CFS. Dr. Forste did not allow Dr. Rowley to choose which semester to take leave; instead, she arranged for Dr. Rowley to begin leave on February 25, 2011, two months before her child was born. And while BYU policy was to relieve Dr. Rowley of all her duties during leave, Dr. Forste only relieved Dr. Rowley of her teaching duties.

In January 2011, BYU began a "unit review" of the Department of Sociology. A unit review is a periodic review process in which BYU faculty from other departments and outside reviewers "examine department policies and conduct interviews of departmental faculty and staff to identify weaknesses and propose changes in departmental operations." (Compl. ¶ 35.) As part of the unit review, Professor Mary Anne Woodger interviewed Dr. Rowley. Noticing that Dr. Rowley was pregnant, Professor Woodger asked what Dr. Rowley thought of BYU's parental leave policy. Dr. Rowley responded that she appreciated the time from teaching, but was concerned about meeting her research and publication demands because her CFS "clock" was still running. Professor Woodger asked why she had not requested a one-year CFS extension pursuant to BYU policy. Dr. Rowley told her that she had worked with Dr. Forste to coordinate leave, and that Dr. Forste had represented "nothing could stop the CFS clock." (Id. ¶ 39.)

The resulting unit review report seemed to address how Dr. Forste had mishandled Dr. Rowley's parental leave request:

> We .... recommend that the University's policy of a one-semester leave, with a stopped tenure clock, for a woman who gives birth, be made standard practice within the Department [of Sociology] .... As soon as possible, the faculty should cooperate in creating and adopting a governance document that will enable the department to be more transparent and consistent about its governance. More should be written down and documented about policies and procedures .... [such as] how to grant academic and maternity leaves.

4

(Id. ¶ 42.)

Following the report, Dr. Rowley asked Dr. Forste for a one-year extension on her CFS clock and a semester of leave in which she would be relieved of all her duties, not just teaching. Dr. Forste, upset and angry for having been "called out" in the report, denied her request.

Dr. Forste's demeanor towards Dr. Rowley changed. She became more critical of Dr. Rowley and began taking certain negative actions against her, a number of which are detailed in the complaint.

In the fall of 2011, Dr. Rowley tried to schedule two meetings with Dr. Forste, one of which was to receive her annual review. Dr. Forste refused to meet, and told Dr. Rowley that the meetings were unnecessary.

In May of 2011, Rice University offered Dr. Rowley a two-year visiting research position. Dr. Rowley applied for two years of paid research leave, but BYU only granted her one year of unpaid leave with a commensurate one-year CFS extension. Dr. Rowley approached Dr. Forste with concern that one year would be too short a time to effectively perform research. Dr. Forste assured Dr. Rowley that she would help facilitate a second year. Dr. Rowley took the visiting position, but Dr. Forste denied her request for a second year—even when Dr. Rowley secured funding from Rice to buy out her BYU contract, an arrangement that would have been financially lucrative for BYU. Because Dr. Rowley could not secure another year at Rice, her research suffered and she was unable to prepare articles for publication, a key metric for approval of tenure.

Dr. Rowley returned to BYU for the fall semester of 2012. Upon returning, Dr. Forste continued to undermine Dr. Rowley. She discouraged Dr. Rowley's participation in faculty

meetings, openly and hostilely disagreed with Dr. Rowley's suggestions, gave Dr. Rowley less favorable teaching schedules and assignments, and, in contravention of BYU policy, denied Dr. Rowley a new mentor when her mentor retired. Additionally, Dr. Forste sent a critical email to Dr. Rowley stating that her research was insufficient, using an unwritten standard for the rate of publication that did not apply to other faculty. And she criticized Dr. Rowley to other senior faculty, including Dr. Jacobson.

Dr. Forste stepped down from her role of department chair in April of 2012. In January of 2013, Dr. Jacobson became department chair and, in that role, continued to retaliate against Dr. Rowley. Dr. Rowley's allegations against Dr. Jacobson center on her application for tenure status.

Dr. Rowley submitted her application for tenure status in 2014. On September 12, 2014, the Department of Sociology's tenure committee voted two to one in favor of granting her tenure, citing her excellent teaching record, collegiality, and positive reviews of her scholarship. Her application was then reviewed by a second committee of CFS faculty members, which included Dr. Jacobson and Dr. Forste. That committee voted three to six against granting her tenure. Dr. Forste voted against her, and told Dr. Jacobson of her vote, which she had cast anonymously.

On October 2, 2014, following the two committee votes, Dr. Jacobson wrote a letter to Dr. Ben Ogles, the Dean of the College of Family, Home, and Social Sciences, recommending that Dr. Rowley not advance to tenure status. Dr. Jacobson based his recommendation on her scholarship. He determined that her publications were not sufficiently "sociological" in nature. He also determined that her rate of scholarship—the average number of articles Dr. Rowley

published each year—was too low. While the Department of Sociology's written criteria required that a successful CFS candidate publish six to twelve articles over the course of their CFS period (Dr. Rowley had published eleven articles), Dr. Jacobson used his own unwritten standard that a tenure candidate publish between 1.4 and 2.1 articles per year. He calculated Dr. Rowley's publication rate as 1.25 articles per year, but he used time—periods of parental leave and a one-and-a-half year period before Dr. Rowley started her CFS-track position—that should have been excluded from her CFS clock.

On December 8, 2014, Dr. Ogles wrote a letter to BYU's Associate Academic Vice President and Academic Vice President denying Dr. Rowley's CFS advancement, on the same grounds as Dr. Jacobson. On April 21, 2015, Dr. Rowley received a letter from the Academic Vice President recommending against her application for tenure status. The letter highlighted Dr. Jacobson's conclusions—"that Dr. Rowley had issues with her 'publication productivity' and that she had a 'lack of sociological focus.'" (Compl. ¶ 100.) BYU then removed Dr. Rowley from her CFS-track position and placed her in a temporary position.

On July 22, 2015, Dr. Rowley appealed the Academic Vice President's recommendation to an independent panel. The panel affirmed the recommendation on February 8, 2017. BYU terminated her employment in August of 2017.

Dr. Rowley filed the Complaint in this case on May 1, 2018. She alleges three causes of action solely against BYU: (1) breach of contract; (2) breach of a covenant of good faith and fair dealing; and (3) pregnancy discrimination in violation of Title VII of the Civil Rights Act. She also alleges a fourth cause of action for retaliation in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq., against BYU, Dr. Forste, and Dr. Jacobson.

7

BYU, Dr. Forste, and Dr. Jacobson now move to dismiss some, but not all, of Dr. Rowley's FMLA and contract claims as untimely under Federal Rule of Civil Procedure 12(b)(6). Dr. Forste and Dr. Jacobson also move to dismiss the remaining FMLA claims against them individually, on the grounds that any claims against their actions are time barred and, alternatively, that they do not fall within the FMLA's definition of "employers."

## STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion, the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In doing so, "the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1105 (10th Cir. 2017). Nonetheless, the court may resolve statute of limitations defenses "when the dates given in the complaint make clear that the right sued upon has been extinguished." Sierra Club v. Oklahoma Gas & Elec. Co., 816 F.3d 666, 671 (10th Cir. 2016) (internal quotation omitted).

## DISCUSSION

### I. Contract-Based Claims

Claims for breach of a written contract are subject to a six-year statute of limitations.[2] Utah Code § 78B-2-309(2). Likewise, claims for breach of an implied covenant of good faith and fair dealing based on a written contract are subject to the same limitation. See CIG

---

[2] For the purpose of its Motion to Dismiss, BYU has assumed that the six year statute of limitations for written contracts applies, rather than the four year statute of limitations for breach of unwritten contracts.

Exploration, Inc. v. State, 24 P.3d 966, 971 (Utah 2001). These claims accrue and the statute of limitation begins to run at the time the breach occurs. Butcher v. Gilroy, 744 P.2d 311, 313 (Utah Ct. App. 1987).

Dr. Rowley lists a number of alleged breaches of her faculty contract with BYU, which range in date from 2011 to her termination in August of 2017:

> a) Failing to stop Plaintiff's CFS clock during her leave for birth of her child;
>
> b) Failing to relieve her from all of her duties during that time;
>
> c) Failing to allow her to choose when to take the leave;
>
> d) Failing to stop her clock during her personal leave at Rice;
>
> e) Failing to provide her a mentor;
>
> f) Denying her CFS status although her publications met the written CFS policy of the department;
>
> g) Counting the time Dr. Rowley should have been on parental leave during her CFS review;
>
> h) Counting time when she was not on the CFS clock, when she was in a different position and when she was on personal leave against her during her CFS review;
>
> i) Removing her from her position and placing her on temporary contracts during the consideration of her CFS appeal;
>
> j) Denying Dr. Rowley a tenured professor position; and
>
> k) Terminating her employment.

(Compl. ¶ 109.)

Dr. Rowley filed her Complaint on May 1, 2018. May 1, 2012, is the last date on which any of her contract-based claims must have accrued to be timely. BYU argues that four of her claims, sub-paragraphs (a), (b), (c), and (e), occurred before the statutory cut-off.

Dr. Rowley does not argue otherwise. She concedes that she cannot collect damages for those alleged breaches, but included them "to show a pattern of breaches and illustrate how they lead directly to, indeed caused, the later breaches of contract—the denial of tenure and termination of her employment." (Pl.'s Opp. to Mot. to Dismiss ("Opp.") at 16, ECF No. 14.) The court agrees with the parties. While sub-paragraphs (a), (b), (c), and (e) may lend context to timely contract claims, they fall outside the six-year limitation period and must be dismissed as stand-alone causes of action.

## II.     FMLA Claims Against All Defendants

The FMLA contains two limitations provisions—a general two-year limitation and a three-year limitation for willful violations of the Act. 29 U.S.C. § 2617(c)(1)–(2). Both limitation periods begin to run on "the date of the last event constituting the alleged violation for which the action is brought." Id.

Dr. Rowley pleads her FMLA retaliation claim much as she pleads her contract claims, asserting causes of action based on a series of allegedly retaliatory acts:

> Defendants unlawfully retaliated against Dr. Rowley both for exercising or attempting to exercise her FMLA rights and for participating in the internal investigation by, including but not limited to, committing the following acts:
>
> a) Refusing to grant her a one-year extension on her CFS clock and a full semester in which she would be relieved of all duties, not just teaching, as provided for in the policy;

b) Creating a contentious work environment;

c) Criticizing Dr. Rowley behind her back with senior faculty, one of whom became department chair;

d) Failing to cooperate with Dr. Rowley in coordinating a second year at Rice;

e) Failing to hold meetings with Dr. Rowley while on leave;

f) Failing to provide Dr. Rowley a mentor;

g) Apportioning Dr. Rowley less favorable class schedules;

h) Counting the time Dr. Rowley should have been on FMLA leave during her CFS review;

i) Counting time when she was not on the CFS clock, when she was in a different position and when she was on personal leave, against her during her CFS review;

j) Imposing disparate standards for tenure that only applied to Dr. Rowley;

k) Removing her from her position and placing her on temporary contracts during the consideration of her CFS appeal in violation of policy;

l) Denying Dr. Rowley a tenured professor position; and

m) Terminating her employment.

(Compl. ¶ 123.)

The Defendants moves to dismiss sub-paragraphs (a) through (k) as untimely under the FMLA's three-year limitations provision.[3] Each of these events occurred before May 1, 2015.

---

[3] For the purposes of its Motion only, the Defendants have assumed that the three-year limitation applies.

Unlike her contract claims, Dr. Rowley does not concede that the events at issue are untimely. Rather, she argues that "the actions set forth in the Complaint are not isolated events, but rather part of a comprehensive pattern, culminating in the final event—the denial of tenure and termination of Dr. Rowley's employment." (Opp. at 7–8.) These, she argues, were the "last event" of retaliation for the purposes of the FMLA's statute of limitations.

Dr. Rowley implies a "continuing violation" theory that does have a place in employment law. The Supreme Court validated the continuing violation doctrine for hostile work environment claims brought under Title VII. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002). Title VII requires that claims be brought either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Since "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" the Court held that if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Morgan, 536 U.S. at 117.

The Tenth Circuit has not decided whether the continuing violation doctrine applies to FMLA claims. See Packard v. Cont'l Airlines, Inc., 24 F. App'x 960, 962 (10th Cir. 2001). But other circuits have rejected its application. In Barrett v. Illinois Department of Corrections, 803 F.3d 893 (7th Cir. 2015), the plaintiff, a corrections officer, was fired from her job in 2010 because she had taken twelve unexcused absences, one over the maximum number allowed by company policy. She filed suit in 2012, alleging that three of her unauthorized absences—one in 2003, one in 2004, and one in 2005—were protected under the FMLA and should have been authorized. The Seventh Circuit held that her FMLA claim of interference was time barred, even

though the resulting adverse employment action (her termination) occurred within two years of her suit. Her employer's refusal to authorize the absences were "'discrete acts'—independently actionable violations of the FMLA—and each one triggered its own limitations clock." Id. at 899.

Dr. Rowley argues that Barrett involves claims of interference with FMLA rights, not retaliation, and is not binding authority. She cites instead to McCully v. American Airlines, Inc., 695 F. Supp. 2d 1225 (N.D. Okla. 2010), in which the plaintiff, who used FMLA leave for cancer treatment, alleged that her employer retaliated against her in part by failing to return her to an equivalent position upon her return, and then by ultimately firing her. The defendant, her employer, argued that its failure to return claim fell outside the FMLA's limitation period.

The court, distinguishing interference claims from retaliation claims, decided it "more appropriate to treat the failure to return claim as part of an alleged ongoing pattern of retaliation." Id. at 1251. "Because the last act constituting the alleged retaliation (McCully's termination) occurred within the two-year limitations period," the court determined the earlier and otherwise-untimely retaliation claim based on the position change to be actionable. Id.

This court finds Barrett the better-reasoned case. While Barrett did not involve claims of retaliation, Dr. Rowley has pled a series of discrete retaliatory acts that, for statute of limitations purposes, can be analyzed in the same manner as discrete acts of interference. Those events which culminated before May 1, 2015 are time-barred.

Title VII decisions are instructive when analyzing FMLA claims, see Packard, 24 F. App'x at 962, and support the approach in Barrett. The Tenth Circuit distinguishes hostile work environment claims, which do support a continuing violation theory, from "discrete acts of

13

discrimination or retaliation, [for which] the application of Title VII's limitations period is straightforward." Hansen v. SkyWest Airlines, 844 F.3d 914, 923 (10th Cir. 2016) (emphasis added). And the Supreme Court has emphasized that Title VII claims accrue at the time the violative acts occurred, "not upon the time at which the consequences of the acts became most painful." Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980) (internal quotation omitted). Accordingly, sub-paragraphs (a) though (k)[4], which occurred outside the FMLA's three-year limitation period, are dismissed as actionable claims.[5]

### III. FMLA Claims Against Dr. Forste and Dr. Jacobson Individually

Dr. Forste and Dr. Jacobson ask the court to dismiss the FMLA claims against them individually on two grounds. First, they argue that any claims against them as individuals are time barred. Alternatively, both argue that they do not qualify as "employers" under the FMLA.

The Tenth Circuit has not decided whether individuals may be held liable under the FMLA. But the plain language of the statute indicates as much, defining an "employer" to include "any person who acts, directly or indirectly, in the interest of the employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Likewise, FMLA regulations provide that "individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA. 29 C.F.R. § 825.104(d).

---

[4] Though Dr. Rowley claims that the Defendants violated the FMLA in part by "[c]reating a contentious work environment," (Compl. ¶ 123(b)), she has not alleged any specific retaliatory events occurring after May 1, 2015 to support that claim in particular.

[5] While these allegedly retaliatory acts are not actionable, Dr. Rowley might be able to present them to establish her prima facie case of retaliation based on the remaining, actionable events. See Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006).

District courts within the Tenth Circuit, including the District of Utah, have found that individuals may be held liable under the FMLA. See, e.g., Solis v. Ronin Risk USA, LLC, No. 2:08-CV-701 TS, 2010 WL 1253978, at *2 (D. Utah Mar. 24, 2010); Cordova v. New Mexico, 283 F. Supp. 3d 1028, 1037 (D.N.M. 2017). Based on the language of the statute, this court likewise finds that the FMLA can impose liability on individual defendants.

But courts use different tests to determine whether an individual is an employer. In this district, for instance, Judge Stewart used the "control" test, which asks "'whether the defendant had the ability to control, in whole or in part, whether the plaintiff could take a leave of absence and return to the position.'" Pedersen v. W. Petroleum, Inc., No. 2:07-CV-997 TS, 2008 WL 977370, at *3 (D. Utah Apr. 9, 2008) (quoting Oby v. Baton Rouge Marriott, 329 F. Supp. 2d 772, 788 (M.D. La. 2004)). Judge Browning, in the District of New Mexico, borrowed the "economic realities" test used to determine whether an individual is an "employer" under the Fair Labor Standards Act. See Saavedra v. Lowe's Home Centers, Inc., 748 F. Supp. 2d 1273, 1284–87 (D.N.M. 2010). The four-factor test considers "(i) whether the alleged employer has the power to hire and fire employees; (ii) whether the alleged employer supervises and controls employee work schedules or conditions of employment; (iii) whether the alleged employer determines the rate and method of payment; and (iv) whether the alleged employer maintains employment records. Id. at 1292 (citing Baker v. Flint Eng'g & Const. Co., 137 F.3d 1436, 1440 (10th Cir. 1998))

At the motion to dismiss stage, a plaintiff "is not required to specifically allege all facts relevant to the individual defendants' authority, especially when the factual record has not yet been developed through discovery." Cordova, 283 F. Supp. 3d at 1040. Instead—and regardless

of the test used—a plaintiff need only plead that the individual defendants "'had substantial control over the aspects of employment alleged to have been violated.'" Id. (quoting Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 476 (S.D.N.Y. 2011)); see also Pedersen, 2008 WL 977370, at *3 (denying a motion to dismiss claims against an individual defendant when the plaintiff "has sufficiently alleged" that the individual defendant "had the ability to control whether Plaintiff could take a leave of absence or return to his position"); Saavedra, 748 F. Supp. 2d at 1295 (denying a motion to dismiss where the plaintiffs "alleged specific facts" regarding the individual defendant's control over an employee's leave and the ability to fire the employee, and further noting that plaintiffs need not plead every element of the economic-reality test).

Dr. Rowley has alleged that Dr. Forste held a supervisory role as department chair and, in that position, exercised control over the timing and duration of Dr. Rowley's parental leave and committed retaliatory acts. But Dr. Forste left her supervisory position "[i]n or around April 2012," eight years before Dr. Rowley filed this case. (Compl. ¶ 66.) As discussed above, the retaliatory acts that occurred when Dr. Forste supervised Dr. Rowley are time-barred. Because Dr. Forste held no supervisory role during the later events, the remaining FMLA claims against her individually are dismissed.

Dr. Jacobson, however, became department chair (and so assumed a supervisory role over Dr. Rowley) in January of 2013. He apparently held that position when Dr. Rowley was denied tenure. And Dr. Rowley has alleged sufficient facts showing that Dr. Jacobson exercised control over her advancement through the tenure-approval process. For these reasons, the remaining FMLA claims against him individually are not dismissed.

## ORDER

For the foregoing reasons, the Defendants' Motion to Dismiss (ECF No. 3) is GRANTED IN PART and DENIED IN PART as follows:

1. Dr. Rowley's claims for breach of contract and breach of covenant of good faith and fair dealing based on sub-paragraphs 109(a), (b), (c), and (e) of the Complaint are DISMISSED WITH PREJUDICE;

2. Dr. Rowley's FMLA retaliation claims against BYU, Dr. Forste, and Dr. Jacobson based on sub-paragraphs 123(a) through (k) of the Complaint are DISMISSED WITH PREJUDICE; and

3. Dr. Rowley's remaining FMLA retaliation claims against Dr. Forste are DISMISSED WITH PREJUDICE.

SO ORDERED this 12th day of March, 2019.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge